UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-132 |
| | § | |
| AMBIENTE BAR LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Factual and Procedural Background

Now before the Court is the Motion for Summary Judgment filed by Plaintiff Joe Hand Promotions, Inc., as Broadcast Licensee of the March 27, 2010 Ultimate Fighting Championship: Georges St. Pierre v. Dan Hardy Event ("the Event"). (Dkt. No. 22). On March 22, 2013, Plaintiff filed this case alleging violations of the Federal Communications Act of 1934, as amended ("Communications Act"), which protects against the unauthorized interception and broadcast of cable and satellite transmissions. (Dkt. No. 1); *see* 47 U.S.C. §§ 553 and 605. Plaintiff alleges that Defendants Ambiente Bar LLC, individually and d/b/a Ambiente and d/b/a Ambiente "Live Music Venue" ("Ambiente Bar LLC") and Pedro A. Garcia, individually and d/b/a Ambiente and d/b/a Ambiente "Live Music Venue" ("Garcia") violated sections 553 and 605 by intercepting the closed-circuit telecast of the Event, including undercard or preliminary bouts, and exhibiting it in Defendants' commercial establishment without Plaintiff's authorization and without paying the required commercial licensing fee to Plaintiff. (Dkt. Nos. 1, 22). Plaintiff obtained a default judgment against Ambiente Bar LLC on August 15, 2013, and now moves for summary judgment on its claims against Garcia, relying on deemed admissions

and evidence to establish the elements of those claims. (Dkt. Nos. 21, 22).[1] Garcia asks the Court to permit him to withdraw the deemed admissions, and offers evidence to dispute his individual liability. (Dkt. No. 25).

## II.    Plaintiff's Motion for Summary Judgment

### A.    Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable

---

[1] Plaintiff also obtained entry of default against Garcia, who then appeared through counsel and moved to set aside the default and for leave to answer the lawsuit. (Dkt. Nos. 8, 9, 13). The Court granted these motions. (Dkt. No. 17).

inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

**B.     Defendant Garcia's Liability**

**1.     Overview of Applicable Law**

Section 553 of the Communications Act prohibits the unauthorized interception or receipt of cable services, whereas section 605 prohibits the same with respect to satellite communications. *E.g.*, *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, 2014 WL 198159, at *2 (W.D.La. Jan. 14, 2014) (citing *Joe Hand Promotions, Inc. v. Lee*, 2012 WL 1909348, at *3 (S.D.Tex. May 24, 2012)). To prevail under either statute, Plaintiff need only prove (1) that the event was shown in Defendants' commercial establishment (2) without Plaintiff's authorization, and (3) that Plaintiff was the exclusive licensee. *Id.* at *3 (citing cases). Both statutes expressly prohibit assisting third parties in intercepting or receiving unauthorized communications,[2] and have been interpreted to allow Plaintiff to hold Garcia individually liable if he had (1) the right and ability to supervise the unauthorized activities of the establishment and (2) an obvious and direct financial interest in those activities. *Id.* at *3 n. 5; *Joe Hand Promotions, Inc. v. Chapa*, 2009 WL 2215124, at *3 n.2 (S.D.Tex. July 22, 2009); *Joe Hand Promotions, Inc. v. Adame*, 2012 WL 3561367, at *4 (W.D.Tex. Aug. 16, 2012); *J&J Sports Prods., Inc. v. Q Café, Inc.*, 2012 WL 215282, at *4 (N.D.Tex. Jan. 25, 2012).

---

[2] Section 553 provides in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Section 605 provides: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." *Id.* § 605(a). "Section 605's prohibition against the unauthorized interception of any 'communication by radio' includes the unauthorized interception of 'any satellite cable programming,' where the satellite programming is encrypted, and 'an agent or agents have been lawfully designated for the purpose of authorizing private viewing by individuals....'" *G&G Closed Circuit Events LLC*, 2014 WL 198159, at *2 (quoting *Id.* § 605(b)).

## 2.      Summary Judgment Evidence

Apart from the deemed admissions,[3] Plaintiff's Motion presents uncontested evidence that Ambiente d/b/a Ambiente "Live Music Venue," owned by Ambiente Bar LLC, showed the Event without the authorization of exclusive licensee Plaintiff.  (Dkt. No. 22, Exhs. A, D; *see also* Dkt. No. 25).  Plaintiff also presents evidence that Garcia is the registered agent and sole member of Ambiente Bar LLC, which was formed on September 15, 2009 and listed "in good standing not for dissolution or withdrawal through May 15, 2013" on the website of the Texas Comptroller of Public Accounts.  (Dkt. No. 22, Exh. D).

In an attempt to defeat Plaintiff's showing of his individual liability, Garcia submits his affidavit, the "Regulations/Operating Agreement of Ambiente, L.L.C.," and an Internal Revenue Service ("IRS") Form 2553, "Election by a Small Business Corporation," apparently submitted by Ambiente Bar LLC.  (Dkt. Nos. 25-1, 25-2).  Garcia attests that he was a minority manager of Ambiente Bar LLC, and that the other two managers were Leo Garcia and Hacerlo, LLC ("Hacerlo").  (Dkt. No. 25-1 at ¶ 2).  Defendant Garcia's role in the business was to market "Ambiente" and attract musical groups and acts.  *Id.* at ¶ 3.  Sometime in 2010 (Garcia does not specify a date), conflicts developed relating to Ambiente's "operations, goals, and finances," and Garcia "was set aside and removed from the daily operations and management" and "no longer advised on Ambiente's financial status or its obligations with creditors."  *Id.* at ¶¶ 3, 4.  Hacerlo's role was also "diminished."  *Id.* at ¶ 4.  Garcia states that eventually, "[w]e were forced to file a lawsuit—*Ambiente Bar, LLC et al. v. Leo A. Garcia, et al.* C-299-11-C pending in Hidalgo County District Court," asserting claims "related to fiduciary duties, conversion, and contract breaches."  *Id.* at ¶ 5.  Garcia attests that Leo Garcia was "the manager overseeing

---

[3]  The Court need not resort to the deemed admissions to determine Plaintiff's Motion, and therefore need not consider Garcia's request for their withdrawal.

Ambiente operations" on March 27, 2010, and that Defendant Garcia had no knowledge of the showing of any event on that date, or whether any profit was realized. *Id.* at ¶¶ 6, 7. According to Garcia, he currently has no authority over Ambiente's operations and is unaware if Ambiente is still operating. *Id.* at ¶ 8.

The Operating Agreement submitted by Garcia was adopted on August 20, 2010 by Garcia, Leo Garcia, and Hacerlo as managers of "Ambiente, L.L.C." (rather than Ambiente Bar LLC), and contains an indemnification provision to which Garcia appeals, discussed *infra*. (Dkt. No. 25-2 at p. 8). The IRS Form 2253 reflecting Ambiente Bar LLC's election to be an "S corporation" for tax purposes lists the "number of shares or percentage of ownership" as follows: Defendant Garcia (40%), Leo Garcia (40%), and Hacerlo (20%). (Dkt. No. 25-2 at pp. 9-11).

**3.    Analysis**

In evaluating the evidence, the Court first notes that the relevant date for assessing liability is March 27, 2010, the undisputed date the Event was shown at the Ambiente establishment. Garcia describes conflicts that developed in 2010, but provides no indication of whether he was "removed from the daily operations and management" prior or subsequent to March 27. Given that Ambiente's three managers entered into an Operating Agreement on August 20, 2010, this omission is notable. Garcia states that Leo Garcia was "overseeing" Ambiente's operations on March 27, 2010 and that Defendant Garcia had no knowledge of the unauthorized broadcast or any profits stemming from it. However, Garcia stops short of stating that as of that date, he was not able to supervise Ambiente's unauthorized activities and derived no direct financial benefit from those activities if they occurred. The Court therefore finds that Garcia's evidence fails to raise a genuine issue of material fact on whether he is subject to individual liability.

Garcia also appeals to the indemnification provision in the Operating Agreement to argue that Plaintiff cannot recover against him, but to the extent it applies here, the provision merely allows Garcia to seek indemnification from "the Company" in the event Garcia is found liable in this case. (Dkt. No. 25).[4] Finally, Garcia cites to certain sections of the Texas Business Organizations Code setting forth the general rule that an LLC member may not be held liable for the LLC's "debt, obligation or liability," *see* TEX. BUS. ORGS. CODE §§ 101.113, 101.114, 21.223, but this rule does not alter the separate test for holding an individual liable under sections 553 and 605 of the Communications Act. *Id.* Having met that test, Plaintiff may recover against Garcia for his own liability to Plaintiff.

## C. Damages

Plaintiff has elected to seek relief under section 605, which allows for the requested recovery of statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just," 47 U.S.C. § 605(e)(3)(C)(i)(II), additional damages awarded "in the court's discretion" where the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," *id.* § 605(e)(3)(C)(ii), "full costs, including…reasonable attorney's fees," *id.* § 605(e)(3)(B)(iii), and permanent injunctive relief to prevent future violations, *id.* § 605(e)(3)(B)(i). (Dkt. No. 22). Garcia offers no argument with

---

[4] The provision states in full:

> Any person made or threatened to be made a party to art (sic) action or proceeding, whether civil or criminal, by reason of the fact that he, his testator or intestate, then, is, or was an officer, manager, employee or agent of the Company, or then serves or has served on behalf of the company in any capacity at the request of the Company, shall be indemnified by the Company against reasonable expenses, judgments, fines and amounts actually and necessarily incurred in connection with the defense of such action or proceeding or in connection with an appeal therein, to the fullest extent permissible by the laws of the State of Texas. Such right of indemnification shall not be deemed exclusive of any other rights to which such person may be entitled.

(Dkt. No. 25-2 at p. 8).

respect to the requested relief. *See* (Dkt. No. 25). The Court finds, upon consideration of Plaintiff's Motion and evidence, that $3,000 in statutory damages represents a just amount that takes into account the money saved by Defendants by not paying Plaintiff's license fee, as well as any profits derived from sales to customers who stayed to watch the Event.[5] The Court also finds that this amount serves the ends of punishing the unauthorized interception and broadcast of satellite communications and deterring future violations, and will not award additional damages for any "willful" violation. The Court finds reasonable Plaintiff's request for an attorney's fee award of $2,000 (eight hours of attorney time at the rate of $250 per hour),[6] and will award court costs. Post-judgment interest will be calculated at the rate determined by federal law. *See* 28 U.S.C. § 1961(a). The Court will also grant the requested injunction.

## III. Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Plaintiff's Motion for Summary Judgment (Dkt. No. 22) is **GRANTED**. The Court will enter a separate final judgment against both Defendants.[7]

SO ORDERED this 13th day of February, 2014, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[5] *See* (Dkt. No. 22, Exh. A at ¶ 8 (license fee based on establishment capacity); Exh. A-2 (including two separate affidavits noting capacity of 60 and 300, respectively, for Ambiente establishment on March 27, 2010, and presence of 28-43 customers during Event); Exh. A-3 (reflecting license fee of $1,100 for establishment with capacity of 60 and $1,800 for establishment with capacity of 300)).

[6] *See* (Dkt. No. 22, Exh. B). The Court finds that the amount of any fees to be incurred on appeal is too speculative, and will deny without prejudice Plaintiff's request for a conditional fee award. Should an appeal be taken on which Plaintiff prevails, it may make its request for attorney's fees to the appropriate forum.

[7] The same exhibits on which the Court relies to calculate the damages and attorney's fee award against Defendant Garcia were produced in support of Plaintiff's motion for default judgment, which was granted with respect to Defendant Ambiente Bar LLC. (Dkt. Nos. 7, 21). The Court's calculation applies equally to both Defendants.